**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN A. MELIKIAN, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SZR HAVERFORD, AL, LLC, d/b/a | : | |
| SUNRISE SENIOR LIVING OF | : | |
| HAVERFORD; | : | |
| SUNRISE HAVERFORD ASSIST | : | NO. 12-1401 |
| ED ASSISTED LIVING | : | |
| LLC, d/b/a SUNRISE SENIOR | : | |
| LIVING OF HAVERFORD; | : | |
| SUNRISE SENIOR LIVING | : | |
| MANAGEMENT, INC. d/b/a: | : | |
| SUNRISE SENIOR LIVING | : | |
| OF HAVERFORD | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM ON PARTIAL MOTION TO DISMISS

**BAYLSON, J.**                                                                    **June 19, 2012**

## I.    Introduction

The action arises out of an incident at an assisted living residence, in which Plaintiff

Roxie Melikian allegedly fractured her pelvic bone during a total power outage. Plaintiff Roxie

Melikian, together with her children, who are also her agents through a power of attorney, Karen

Melikian, Michele Lockwood and Robert Melikian (collectively, "Plaintiffs"), bring this action.

Defendants in this case are SZR Haverford AL, LLC, d/b/a/ Sunrise Senior Living of Haverford,

Sunrise Haverford Assisted Living, LLC, d/b/a/ Sunrise Senior Living of Haverford, and Sunrise

Senior Living Management, d/b/a Sunrise Senior Living of Haverford (collectively, "Sunrise of

Haverford" or "Defendants").[1] Plaintiffs allege the following claims against all Defendants: Negligence (Count I), Breach of the Residency Agreement (Count II), and Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 (Count III). On March 26, 2012, Defendants moved to dismiss Counts II and III pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 2). Plaintiffs filed a Response (ECF No. 6) on April 13, 2012, and Defendants filed a Reply (ECF No. 8) on April 27, 2012.

For the reasons discussed below, the Court will GRANT Defendants' Motion, with leave to Plaintiffs to amend their Complaint within twenty-one days.

## II.     Factual Background

Plaintiffs allege the following facts, which this Court accepts as true for the purpose of deciding this Motion to Dismiss. On December 23, 2008, Karen Melikian, on behalf of Roxie Melikian, signed a "Residency Agreement" with Defendants, which states in relevant part that residents will receive basic assistance including monitoring and observing of the resident, an emergency response system, and a staff member available at all times. Compl. ¶¶ 14, 19. After Roxie Melikian moved into Sunrise of Haverford, Defendants promised to look in on her every thirty minutes. Id. ¶ 20. Sunrise of Haverford had no emergency lighting, back-up power source in the event of a power failure, and no emergency generator. Id. ¶¶ 21-22, 24.

At 10:55 pm on the night of January 13, 2010, there was a power outage at Sunrise of Haverford that resulted in no electricity or heating in the entire building, including Roxie Melikian's suite. Id. ¶ 26. Due to the cold, Roxie Melikian awoke before midnight. Id. ¶ 28. As

---

[1]Defendant Sunrise Haverford Assisted Living, LLC d/b/a Sunrise Senior Living of Haverford amended its name to SZR Haverford, AL, LLC on April 20, 2011. Not. of Removal ¶ 7. Therefore, it appears there are two defendants rather than three.

the temperature continued to drop, she waited for the care assistant to check on her. Id. ¶¶ 28-29. Shortly after midnight, when no Sunrise of Haverford staff had arrived to check on her, Roxie Melikian got out of her bed to get some blankets. Id. ¶ 31. She then fell to the floor, and fractured her pelvic bone. Id. ¶¶ 30-33. More than thirty minutes after the fall and more than an hour after the power outage, Roxie Melikian's sister, who lived in the adjacent suite, heard her cries and notified the Sunrise of Haverford staff. Id. ¶¶ 33-34. Defendants' staff then entered Roxie Melikian's suite and called an ambulance. Id. ¶ 35. Due to her injury, Roxie Melikian is no longer ambulatory, must use a wheelchair, and needs a private duty care aide for 12 hours each day, seven days a week. Id. ¶¶ 38-39.

## III.    The Parties' Contentions

Defendants move to dismiss only Plaintiffs' claims for the breach of residency agreement (Count II) and violation of the Unfair Trade Practices and Consumer Protection Law (Count III).

### A.    Count I

Defendants do not move to dismiss the Negligence claim (Count I). In Count I, Plaintiffs claim that Roxie Melikian's injuries were caused solely by the "negligence, gross negligence, carelessness and recklessness" of the Defendants. Compl. ¶ 43. Specifically, Defendants allegedly failed to monitor Roxie Melikian every thirty minutes or within a reasonable period of time during a power outage, to have adequate staff at the time of the power outage to monitor and observe her, and to render assistance at the time of the power outage. Id. ¶¶ 43(a), (c), (k). In addition, Plaintiffs allege that Defendants failed to have an emergency system in place in the event of a power failure such as an electrical generator or a battery-operated emergency light. Id. ¶¶ 43(e)-(g). Plaintiffs request damages against the Defendants in an amount in excess of

$50,000. Id. ¶ 44.

**B.     Count II**

In support of their Motion to Dismiss Plaintiffs' Breach of Residency Agreement claim (Count II), Defendants argue that Count II duplicates the claim for negligence found in Count I. Defs.' Mot. Dismiss ¶ 17. They contend that if an action sounds in tort, any redundant claim for contract should be dismissed. Id. ¶ 16. Defendants also argue that Plaintiffs have failed to make a specific claim for damages related to the alleged breach of contact. Id. ¶ 20.

Plaintiffs respond that the "gist-of-the-action" doctrine does not preclude them from asserting both a tort and a contract claim when the tort claim arises out of a breach of duty imposed by law as a matter of social policy. Pls. Resp. ¶ 16. Plaintiffs also respond that they have made a specific claim for damages of an average cost of $1,000 per week. Id. ¶ 20.

**C.     Count III**

Defendants further argue that Plaintiffs' Count III is not cognizable under the Pennsylvania Unfair Trade Practices and Consumer Protection ("UTPCP") because Plaintiffs offer no specific evidence that any representations made within the Residency Agreement were made with the intent to deceive or defraud Plaintiffs as required under the UTPCP. Defs.' Mot. Dismiss ¶¶ 29-30. Plaintiffs concede that they failed to state a claim under § 201-1 of the UTPCP, but request to amend their Complaint to assert a violation under § 201-2.(4)(xiv) of the UTPCP. Pls.' Br. at 8-9. Defendants maintain that such an amendment would be futile. Defs.' Reply Br. at 7.

IV.     **Legal Standards**

A.     **Jurisdiction and Venue**

This Court has jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §§ 1332(a) and (c), because there is complete diversity of citizenship between the parties[2] and the amount in controversy exceeds $75,000.[3]

Venue is proper under 28 U.S.C. §§ 1391(a) and (c). A civil action founded only on diversity of citizenship may be brought only in a judicial district where any defendant resides. A defendant corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). In this case, Defendants are subject to personal jurisdiction in the Eastern District of Pennsylvania because Sunrise of Haverford is located in the Eastern District of Pennsylvania and the incident occurred here.

B.     **Choice of Law**

A federal court exercising diversity jurisdiction must apply the choice-of-law-rules of the forum state; here, Pennsylvania. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941).

---

[2] On March 20, 2012, Defendants filed a Notice of Removal based on diversity of citizenship. Plaintiffs Karen Melikian, Michele Lockwood, Robert Melikian, and Roxie Melikian are all citizens of the Commonwealth of Pennsylvania. Not. of Removal ¶ 4. Defendant Sunrise Haverford Assisted Living, LLC d/b/a Sunrise Senior Living of Haverford is organized under the laws of Delaware. Defendant SZR Haverford Assisted Living, LLC d/b/a Sunrise Senior Living of Haverford is organized under the laws of Delaware. Id. ¶ 5. Defendant Sunrise Senior Living Management, Inc. is organized under the laws of the state of Virginia with a principal place of business in Virginia. Id. ¶ 8. Accordingly, complete diversity exists in this matter pursuant to 28 U.S.C. §§ 1332(a) and (c).

[3] Plaintiffs' Complaint seeks both compensatory and punitive damages in an amount "in excess of $50,000, pre and post-judgment interest, delay damages and the costs of this action." Compl. ¶ 44. The requirement under 28 U.S.C. § 1332(a) that the amount in controversy exceed $75,000 has been satisfied because the court's determination of the amount in controversy is not measured "by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002). The Court is satisfied that Plaintiffs' damages here could exceed $75,000 based upon Plaintiffs' perspective of the damages alleged in the Complaint. Not. of Removal ¶ 13.

The Residency Agreement in question provides that any claims or disputes arising from the Residency Agreement are governed by and construed in accordance with the laws of the state in which the assisted living residence is located, which in this case is Pennsylvania. Res. Agreement at 13. Pennsylvania courts generally honor the intent of the contracting parties to enforce choice-of-law provisions in contracts. Kruzits v. Okuma Mach. Tool, 40 F.3d 52, 55 (3d Cir. 1994). In addition, the parties do not dispute that Pennsylvania law applies. See Schiavone Constr. Co. v. Time, Inc., 735 F.2d 94, 96 (3d Cir. 1984) (the Court had no cause sua sponte to challenge the choice of law agreed upon by the parties). Consequently, the Court will apply Pennsylvania law.

### C.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), courts may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 555 U.S. at 684.

Iqbal explained that although a court must accept as true all of the factual allegations

6

contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 685. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

After Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two part analysis: First, the factual and legal elements of a claim should be separated–the district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief: a complaint has to "show" such entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

## V.    Analysis

### A.    Count II

In order to support a claim for breach of contract, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract, and (3) resultant damages." <u>McShea v. Philadelphia</u>, 995 A.2d 334, 340 (Pa. 2010) (quoting <u>Hart v. Arnold</u>, 884 A.2d 316, 332 (Pa. Super. Ct. 2005)).

As stated above, Plaintiffs allege a contractual relationship created through the Residency Agreement, which has specific terms outlining the obligations of both parties. Compl. ¶ 46. Plaintiffs allege that Defendants breached their duty to monitor the Resident properly, to provide an emergency response system, and to ensure a staff member is available at all times who can request emergency medical assistance. <u>Id.</u> ¶ 47. Plaintiffs also specifically allege that Defendants breached their duty to monitor and observe Roxie Melikian every thirty minutes in the evening hours. <u>Id.</u> However, Plaintiffs concede this was a promise that Defendants made after Roxie Melikian moved into the residence, and does not appear in the Residency Agreement. <u>Id.</u> ¶ 20. Lastly, Plaintiffs allege damages in excess of $50,000. <u>Id,</u>. ¶ 44.

### 1. The Gist of the Action Doctrine Does Not Apply

Defendants contend that Plaintiffs' Breach of Residency Agreement claim essentially duplicates the claim for negligence, and therefore, should be dismissed. Defs.' Mot. Dismiss ¶ 17. Defendants rely solely on <u>Bailey v. Altland</u>, 39 Pa. D. & C.3d 445 (C.P. York 1983)), a non-binding case which, according to Westlaw and LexisNexis, has not been cited by any court. Moreover, <u>Bailey</u> is distinguishable from the case at hand. In <u>Bailey</u>, the contractual relationship at issue was only the usual physician-patient relationship between the defendant doctor and the plaintiff- an implicit contract to provide proper medical care and treatment, not a written agreement between the parties. <u>Bailey</u>, 39 Pa. D & C.3d at 446. Therefore, <u>Bailey</u> does not adequately support Defendants' argument that Count II should be dismissed.

In addition, as Plaintiffs point out, the gist-of-the-action-doctrine does not apply here

because the doctrine generally precludes a litigant from raising a tort claim when it duplicates the breach of contract claim or when it depends on the success of the breach of contract claim. Reardon v. Allegheny College, 926 A.2d 477, 486 (Pa. Super. Ct. 2007). Although the gist-of-the-action doctrine has not been expressly adopted by the Pennsylvania Supreme Court, a number of Pennsylvania intermediate appellate courts and federal courts have predicted that the Pennsylvania Supreme Court would adopt it. eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).

The gist-of-the-action doctrine prevents a plaintiff from re-casting a breach of contract claim into a tort claim. Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. Ct. 2003). A claim should be limited to a contract claim then when "the parties' obligations are defined by the terms of the contract, not by the larger social policies embodied in the law of torts." Bohler-Uddeholm American Ins. v. Ellwood Grp., Inc., 247 F.3d 79, 103 (3d Cir. 2001). Here, however, Defendants have challenged Plaintiffs' contract claim, not Plaintiffs' tort claim. Therefore, the gist-of-the- action doctrine does not apply.

### 2.  Plaintiffs' Did Not Properly Plead Count II

Although the gist-of-the-action doctrine does not apply, Plaintiffs' Count II, as it stands, fails to meet the pleading standard set forth in Twombly and Iqbal. As it is currently written, Plaintiffs' Breach of Residency Agreement claim (Count II) fails to meet the applicable pleading standard because Defendants' promise to monitor Roxie Melikian every thirty minutes in the evening hours does not appear in the Residency Agreement.  Consequently, Plaintiffs have not pleaded factual content that allows the Court to draw the reasonable inference that Defendants are liable for breach of the residency agreement. It is unclear whether Plaintiffs are arguing that

Defendants' promise to monitor Roxie Melikian every thirty minutes formed an oral contract, or that the promise amended the written Residency Agreement, or something else. Plaintiffs also make passing reference to a landlord-tenant relationship without explaining the impact of that alleged relationship on their claim.

Although the contract claim is currently not adequately described, Plaintiffs may be able to assert damages resulting directly from the breach of the Residency Agreement. Accordingly, the Court will GRANT the Motion to Dismiss as to Count II, but Plaintiffs may amend the Complaint to specify the alleged breaches of contract.

### B. Count III

As mentioned above, Plaintiffs concede that Count III of the Complaint is deficient. Pls.' Br. at 8. Plaintiffs nonetheless request leave to amend to assert a violation of a different subsection of the UTCP, § 201-2(4)(xiv). Id. at 9. The Court will GRANT the Motion to Dismiss as to Count III but will also grant Plaintiffs leave to amend Count III.

## VI. Conclusion

For the foregoing reasons, the Court will GRANT Defendants' Motion to Dismiss the Breach of Residency Agreement (Count II) and Unfair Trade Practices and Consumer Protection Law (Count III). The Court will also GRANT Plaintiffs leave to amend their Complaint within twenty-one (21) days, to cure the deficiencies identified above.

An appropriate Order follows.

O:\CIVIL 11-12\12-1401 Melikian v Sunrise Haverford\Memo Melikian.wpd