IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN A. MELIKIAN, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SZR HAVERFORD, AL, LLC, d/b/a | : | |
| SUNRISE SENIOR LIVING OF | | |
| HAVERFORD; | : | |
| SUNRISE HAVERFORD ASSISTED | : | NO. 12-1401 ASSISTED LIVING   : |
| LIVING LLC, d/b/a SUNRISE SENIOR | : | |
| LIVING OF HAVERFORD; | | |
| SUNRISE SENIOR LIVING | : | |
| MANAGEMENT, INC. d/b/a: | : | |
| SUNRISE SENIOR LIVING | | |
| OF HAVERFORD | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM ON PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**

**BAYLSON, J.**                                                                                                       **November 7, 2012**

**I.     Introduction**

The action arises out of an incident at an assisted living residence in which Plaintiff Roxie Melikian allegedly fractured her pelvic bone during a total power outage. Plaintiff Roxie Melikian, together with her children, who are also her agents through a power of attorney, Karen Melikian, Michele Lockwood and Robert Melikian (collectively, "Plaintiffs"), bring this action. Defendants in this case are SZR Haverford AL, LLC, d/b/a/ Sunrise Senior Living of Haverford; Sunrise Haverford Assisted Living, LLC, d/b/a/ Sunrise Senior Living of Haverford; and Sunrise Senior Living Management, d/b/a Sunrise Senior Living of Haverford (collectively, "Sunrise of

1

Haverford" or "Defendants").[1] In their amended complaint,[2] Plaintiffs allege the following three claims against all Defendants: Negligence (Count I), Breach of the Residency Agreement (Count II), and violation of the Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-2(4)(xiv) (Count III). On July 26, 2012, Defendants filed a Motion to Dismiss Counts II and III pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 12).

For the reasons discussed below, the Defendants' Motion is DENIED.

## II.     Factual Background

Plaintiffs allege the following facts, which this Court accepts as true for the purpose of deciding this motion. On December 23, 2008, Karen Melikian, on behalf of Roxie Melikian, signed a "Residency Agreement" with Defendants, which states in relevant part that residents will receive basic assistance, including monitoring and observing of the resident, an emergency response system, and a staff member available at all times. Compl. ¶¶ 14, 19. After Roxie Melikian moved into the Sunrise at Haverford living facility, the Plaintiffs reached an oral agreement with C.C. Nelson, the facility's Caregiver Manager, that modified the terms of the residency agreement. Id. ¶ 22-25. Under this oral agreement, Plaintiffs agreed to assume responsibility for several of Defendants' contractual obligations (i.e., showering and bathing Rosie Melikian, cleaning her suite, and performing trash removal and laundry) in exchange for the Defendants monitoring and observing Roxie Melikian every thirty minutes from the time she retired in the evening until 7 am each morning.

---

[1] Defendant Sunrise Haverford Assisted Living, LLC d/b/a Sunrise Senior Living of Haverford amended its name to SZR Haverford, AL, LLC on April 20, 2011. Not. of Removal ¶ 7. Therefore, there are now two defendants rather than three.

[2] On June 19, 2012, the Court granted Defendants' Motion to Dismiss, with leave to amend, Counts II and III of Plaintiffs' original complaint. (ECF No. 10).

At 10:55 pm on the night of January 13, 2010, there was a power outage at Sunrise of Haverford that resulted in no electricity or heating in the entire building, including Roxie Melikian's suite.  Id. ¶ 32.  Sunrise of Haverford had no emergency lighting, back-up power source, or emergency generator.  Id. ¶¶ 27-28.  Due to the cold, Roxie Melikian awoke; as the temperature continued to drop, she became "increasingly uncomfortable and alarmed."  Id. ¶¶ 35-36.  Shortly after midnight, when no Sunrise of Haverford staff had arrived to check on her, Roxie Melikian got out of bed to get some blankets.  Id. ¶ 38.  She then fell to the floor, fracturing her pelvic bone as a result.  Id. ¶¶ 38, 40.  Roxie Melikian cried for help, but no one from Defendants' staff came to her assistance.  Id. ¶¶ 39.  More than thirty minutes after the fall, Roxie Melikian's sister, who lived in the adjacent suite, heard her cries and notified Defendants' staff.  Id. ¶¶ 39, 41.  At 12:40 am, Defendants' staff entered Roxie Melikian's suite and called an ambulance.  Id. ¶ 42.  Due to her injury, Roxie Melikian is no longer ambulatory, must use a wheelchair, and needs a private duty care aide for 12 hours each day, seven days a week.  Id. ¶¶ 46-47.

### III. The Parties' Contentions

Defendants move to dismiss Plaintiffs' claims for breach of the residency agreement (Count II) and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count III).

#### A. Count II

In support of their Motion to Dismiss Plaintiffs' breach of the residency agreement claim (Count II), Defendants argue, first, that the factual allegations are insufficient to demonstrate the existence of an oral modification to the written contract.  As noted by the Defendants, the written

contract provided that modifications to the agreement must be "set forth in writing and signed by the Sunrise Senior Vice President of Operations for the Region and the Resident" ("Senior Vice President"). Def's Mot. to Dismiss ¶ 26. Defendants argue, therefore, that since the alleged modification was made orally with an employee other than the Senior Vice President, it had no binding effect on the terms and conditions of the written contract. When stripped of the oral agreement, Defendants contend that Plaintiffs' allegations fail to allege facts with the necessary specificity to show a breach with the general terms of the written residency agreement.

Plaintiffs respond by arguing that the alleged facts are sufficient to demonstrate an intent by both parties to waive the written contract's requirement that all modifications be made in writing and signed by the Senior Vice President. Alternatively, Plaintiffs argue that they have set forth sufficient facts to demonstrate a breach with the more general terms of the written agreement.

      **B.**    **Count III**

Defendants move to dismiss Count III as legally insufficient under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") because the alleged facts do not demonstrate the existence of a warranty as required under the provision of the law, 73 Pa. Stat. Ann. § 201-2(4)(xiv), upon which Plaintiffs seek relief. Plaintiffs respond that the terms of the written residency agreement that promise basic assistance and monitoring, an emergency response system, and the right to receive these services, satisfy the requirements of an express warranty under Pennsylvania law.

**IV.**    **Legal Standards**

      **A.**    **Jurisdiction and Venue**

This Court has jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. §§ 1332(a) and (c), because there is complete diversity of citizenship between the parties[3] and the amount in controversy exceeds $75,000.

Venue is proper under 28 U.S.C. § 1391(b). A civil action founded only on diversity of citizenship may be brought in a judicial district where any defendant resides. A defendant corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(d). In this case, Defendants are subject to personal jurisdiction in the Eastern District of Pennsylvania because Sunrise of Haverford is located in the Eastern District of Pennsylvania and the incident occurred here.

B.   **Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). Courts must accept as true

---

[3] In reviewing Plaintiffs' Amended Complaint, the Court observed that the factual averments failed to demonstrate the existence of complete diversity. Specifically, paragraphs 5 and 8 alleged that both Defendant companies exist under the laws of the Commonwealth of Pennsylvania. These averments were at odds with the factual allegations made by the Defendants in their Notice of Removal. (ECF No. 1). Since the Plaintiffs are citizens of Pennsylvania, the Court issued an Order requesting that the parties provide the requisite factual basis for determining whether complete diversity exists between the parties. (ECF No. 17). In response to this Order, the Defendants submitted a brief, along with six exhibits, which establish the following facts: Sunrise Senior Living Management, Inc. is organized under the laws of the Commonwealth of Virginia and has its principal place of business in McLean, Virginia. Def's Brief in Response to Oct. 11, 2012 Order, at 4-5. Defendant SZR Haverford AL, LLC is a limited liability company and, thus, the Court must look to the citizenship of its members to determine its citizenship for diversity jurisdiction purposes. Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 419-420 (3d Cir. 2010). Where, as here, a limited liability company has another LLC as a member, the citizenship "must be traced through however many layers" of LLC members there may be. Id. at 520. The sole member of SZR Haverford AL, LLC is SZR US UPREIT, LLC, a limited liability company whose sole member is Ventas REIT US Holdings, LLC. Decl. of T. Richard Riney, ¶ 2-3. Ventas REIT US Holdings, LLC is a limited liability company whose sole member is SZR US Investments, LLC. Id. ¶ 4. SZR US Investments, LLC is a limited liability company whose sole member is Ventas Cooperatief, U.A. Id. ¶ 5. Ventas Cooperatief, U.A. is a corporation formed under the laws of the Netherlands, with a principal place of business in the Netherlands. Id. ¶ 6. Since there is no evidence to contradict these facts, complete diversity exists in this matter pursuant to 28 U.S.C. §§ 1332(a) and (c), as interpreted by Zambelli, 592 F.3d at 419-420.

all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'"  555 U.S. at 684.

Iqbal explained that although a court must accept as true all factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted.  Id. at 678, 685.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

After Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two part analysis: First, the factual and legal elements of a claim should

be separated – the district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions; second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief: a complaint has to "show" such entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

V.  Analysis

  A.  Count II

In order to support a claim for breach of contract, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." McShea v. Philadelphia, 995 A.2d 334, 340 (Pa. 2010) (quoting Hart v. Arnold, 884 A.2d 316, 332 (Pa. Super. Ct. 2005)).  Here, Plaintiffs allege a contractual relationship through both the written residency agreement and subsequent oral modification, both of which provide specific terms that outline the obligations of the parties. Compl. ¶¶ 19, 25.  Plaintiffs allege that Defendants breached their obligations under these agreements to check in on Roxie Melikian every thirty minutes, to provide an emergency response system, and to ensure an available staff member who can request emergency medical assistance at all times.  Id. ¶¶ 55-56.  As a result of Defendants' breach of these obligations, Plaintiffs allege that Roxie Melikian was left to fend for herself in a cold, dark room, during which time she fell and broke her pelvis, suffering damages in excess of $75,000.  Id,. ¶ 44.  On their face, these allegations are sufficient to make out the elements of a breach of contract claim.

Although the written agreement provided that modifications must be in writing and

signed by the Senior Vice President, this is not fatal to Plaintiffs' allegations at this stage in the litigation. As an initial matter, the requirement that modifications be in writing is of no moment. Under Pennsylvania law, "[a] written contract which is not for the sale of goods may be modified orally, even when the written contract provides that modifications may only be made in writing." Somerset Community Hosp. v. Allan Brian Mitchell & Assocs., Inc., 685 A.2d 141, 146 (Pa. Super. 1996 (citing Universal Builders, Inc. v. Monn Motor Lodge, Inc., 244 A.2d 10 (Pa. 1968)); see also Wagner v. Graziano Construction Co., 136 A.2d 82, 84 (Pa. 1957) ("The pen may be more precise in permanently recording what is to be done, but it may not still the tongues which bespeak an improvement in or modification of what has been written.").

Nor is this Court persuaded that the written contract's requirement that the Senior Vice President sign the modification vitiates Plaintiffs' claim. The Plaintiffs alleged that Nelson was the Caregiver Manager of the facility and "acting within the course and scope of her employment and authority" when she entered into the agreement; the agreement "was memorialized in the Caregiver standing order records of the Defendants"; and that, on the day of the breach, the caregiver responsible for checking in on Roxie Melikian was fired. Compl. ¶¶ 22, 25-26, 43. These alleged facts, accepted as true, are sufficient to show that the parties may have intended to waive the modification requirements and enter into a binding oral agreement. Accordingly, the Court will deny Defendants Motion to Dismiss Count II.[4]

**B.      Count III**

In order to make out a claim under 201-2(4)(xiv) of Pennsylvania's Unfair Trade

---

[4] Having found the oral agreement to be pled with sufficient factual specificity, we need not consider whether Plaintiffs have pled sufficient facts to demonstrate a breach with the general terms of the written contract.

Practices and Consumer Protection Law (UTPCPL), the Plaintiffs must show that Defendants "[f]ailed to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." 73 Pa. Stat. Ann. § 201-2(4)(xiv). At issue here is whether the Plaintiffs have sufficiently alleged the existence of a warranty. The Court concludes that they have.

Based on the statutory language of 201-2(4)(xiv), it is evident that the word warranty refers to express warranties, not implied warranties. See Tesauro v. Quigley Corp., 2001 WL 1807782, at *4 n.8 (Pa. Com. Pl. Apr. 9, 2001) ("Since 201-2(4)(xiv) requires that the warranty be in writing and that the seller *give* the warranty to the buyer, that section can apply only to written *express* warranties."). Whether an express warranty exists is "purely a question of fact" under Pennsylvania law. Pyott v. Baltz, 38 Pa. Super 608, 1909 WL 3836, at *3 (1909); accord Babcock Poultry Farm, Inc. v. Shook, 203 A.2d 399, 401 (Pa. Super. 1964). An express warranty arises when there is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." 13 Pa.C.S.A. § 2313(a)(1). Whether or not "formal words such as 'warrant' or 'guarantee'" are used, and whether or not a party had the "specific intention to make a warranty" are irrelevant to the warranty inquiry. Id. § 2313(b).

Here, Plaintiffs allege the existence of an express warranty based on language in the written residency contract which states that "the Resident will receive" services, such as "[b]asic assistance including monitoring and observing of the resident" and "[a]n emergency response system." In addition, the Plaintiffs point to language in the agreement that states "[a] resident has the right to receive services contracted for in the resident-home contract." Based, in part, on

9

these representations, Plaintiffs entered into the contract with Defendants. Compl. ¶ 64.

Although the Defendants claim the at-issue written provisions are too generic to constitute a warranty, the two cases it cites to support this contention are readily distinguishable from the case at bar. In Lindstrom v. Pennswood Village, 612 A.2d 1048, 1051-52 (Pa. Super. 1992), the residency agreement at issue promised to provide "a residential community which fosters communal living." This vague, amorphous promise is qualitatively different from the tangible promises of providing a resident monitoring service and emergency response system. The other case that Defendants rely upon, Folflygen v. Zemel, 615 A.2d 1345 (Pa. Super. 1992), is similarly inapposite. In Folflygen, the court addressed the unique problems of finding warranties in statements made by doctors. As the court noted, finding warranties in such statements "would have the effect of making a physician the absolute guarantor of both his treatment and the anticipated results even in the absence of a specific contract warranting those results." Id. at 1354 (quoting Gatten v. Merzi, 579 A.2d 974, 976 (1990)). Unlike Folflygen, the instant case deals with specific contractual obligations in a non-medical context. Since the provisions, on their face, are "affirmation[s] of facts or promises" related to the services provided by the Defendants, and since the Plaintiffs allege they entered the contract based in part on these affirmations, Plaintiffs have adequately pled their entitlement to relief under 201-2(4)(xiv).

## VI. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Counts II and III is DENIED. An appropriate Order follows.

O:\CIVIL 12\12-1401 Melikian v Sunrise Haverford\opinion_11.07.12.wpd